IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No.: LKG-21-371 |
| JAMES WILLIAM WILSON, JR. MAUREEN WILSON | * | |

\* \* \* \* \*

**DEFENDANT JAMES WILSON'S
MOTION FOR SEVERANCE FROM CO-DEFENDANT MAUREEN WILSON**

Defendant James Wilson, through counsel, hereby moves this Court that his trial be severed from the trial of co-defendant Maureen Wilson—his wife—because a joint trial will prejudice his right to a fair trial.

## BACKGROUND

Defendant James Wilson is charged in a multi-count indictment with offenses stemming from allegedly fraudulently-obtained life insurance policies. ECF No. 1 (Indictment). As the Indictment alleges, Mr. Wilson is a long-time insurance producer and broker who was licensed by the State of Maryland to sell life insurance. *Id.* p.1. The charges center on an alleged scheme to submit fraudulent applications for life insurance policies by misrepresenting the health and wealth of the applicants, and fraudulently obtaining money from investors to pay the premiums on these policies in order to collect the death benefits upon payout. This alleged fraud was supposedly implemented through AWA Inc., a life insurance brokerage business that is wholly owned and operated by Mr. Wilson. *Id.*

The Indictment also charges Mr. Wilson's wife of over 20 years, Maureen Wilson, as a co-conspirator and co-defendant. Although Mrs. Wilson has extensive employment experience as a registered stockbroker and held a Series 7 license to sell securities, the Indictment does not allege that she has any experience in the insurance business. *Id.* p.1. Indeed, the Government has not

1

alleged that Mrs. Wilson had any involvement in her husband's insurance business, or any specific knowledge about the life insurance business, such as how to obtain policies. Instead, Mrs. Wilson's specific, individualized involvement in the alleged scheme is exceedingly limited. According to the Indictment, Mrs. Wilson signed a trust agreement, was a *beneficiary* of certain fraudulent life insurance policies, and spent money allegedly derived from the same. *See id*. p.13, 16. Indeed, the discovery indicates that Mrs. Wilson told the Government that her husband handles all insurance business, and "she has no involvement or knowledge into that subject." Exhibit A.

For these reasons, Mr. Wilson anticipates that Mrs. Wilson's defense at trial will be to point the finger entirely at Mr. Wilson. Specifically, Mr. Wilson anticipates that Mrs. Wilson will claim that any wrongdoing lies at Mr. Wilson's door, that she had no knowledge of the scheme, that she did not knowingly participate in the scheme, and that she was herself a victim, misled about the fraudulent life insurance scheme Mr. Wilson was perpetuating. It is presently unclear whether Mrs. Wilson intends to testify at trial. If she does, her expected testimony will inculpate Mr. Wilson.

## ARGUMENT

**I.  Severance Is An Important Tool That Protects Against Prejudicial Joinder.**

Federal Rule of Criminal Procedure 14 provides relief from prejudicial joinder. The Rule provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

The Supreme Court has made clear that severance should be ordered when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). One specific situation in which severance of trials is warranted is where codefendants' trial defenses are so antagonistic that the jury "is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other." *See United States v. Najjar*, 300 F.3d 466, 474 (4th Cir. 2002).

Severance of trials is likewise required when evidence that would inadmissible if a defendant were tried alone is admitted against a codefendant. The classic example of this scenario is where one defendant's statement implicates another defendant. *Zafiro*, 506 U.S. at 539; *United States v. Locklear*, 24 F.3d 641, 646 (4th Cir.1994). This can create a *Bruton* problem, in which a nontestifying codefendant's confession implicates the defendant and a jury instruction is inadequate as a matter of law to protect the other defendant's Confrontation Clause rights. *Locklear*, 24 F.3d at 646 ("*Bruton* holds that, under such circumstances, if the entire, unredacted statement of the codefendant is to be admitted into evidence, a severance is mandated.").

The concerns motivating these dual scenarios are enhanced where co-defendants are husband and wife, particularly where one spouse's defense is to blame the other. In that circumstance, joint trials not only present antagonistic defenses and raise *Bruton* concerns, but they also risk violating a defendant's right to testify and the right to invoke spousal privileges. *See, e.g.*, *United States v. Blunt*, 930 F.3d 119, 127-28 (3d Cir. 2019) (severance was warranted because the wife's testimonial evidence against her husband would have been inadmissible in a separate trial due to the spousal privilege). In these circumstances, when "denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial," the only reasonable course for the district court is to order a separate trial for the defendant. *See United States v. Urban*, 404 F.3d 754, 775-76 (3d Cir. 2005). Such is the case here.

## II. Severance Is Required Here For Three Reasons.

### A. Severance Is Required Due To Spousal Privileges.

Federal courts recognize two marital privileges: the spousal communication privilege and the spousal testimony privilege. While distinct, both privileges are firmly rooted in common law and intended to protect the spousal relationship. *United States v. James*, 128 F. Supp. 2d 291, 293-94 (D. Md. 2001) (stating that the spousal testimony privilege "was intended to promote family harmony by making the witness-spouse incompetent to testify against his or her spouse" (citing *Trammel v. United States*, 445 U.S. 40, 53 (1980)); *United States v. Hamilton*, 701 F.3d 404, 407 (4th Cir. 2012) (explaining that marital communications are privileged "because 'marital confidences' are 'regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails'").

While each privilege has the same shared goal, they function distinctly. The spousal communications privilege "is with the defendant and prevents the spouse from testifying against the defendant regarding confidential communications between the spouse." *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995). In other words, if Mrs. Wilson wanted to testify in her own defense in a joint trial about communications she had with Mr. Wilson, Mr. Wilson could invoke the privilege and prevent her from testifying about those confidential statements.

Conversely, the spousal testimony privilege allows a testifying spouse to choose whether or not to testify against the defendant spouse. *James*, 128 F. Supp. 2d at 293-94. The privilege belongs to the spouse who would like to testify, not to the nontestifying spouse. *Id.* In other words, if Mrs. Wilson wanted to testify in her own defense, it would be her decision to waive the spousal testimonial privilege and Mr. Wilson could not bar her testimony, except to the extent that he invoked the spousal communications privilege.

The Third Circuit's decision in *United States v. Blunt*, 930 F.3d 119 (3d Cir. 2019) is instructive. In that case, the Third Circuit was "confronted with the issue of whether co-defendant spouses being tried jointly are required to have their case severed when one spouse must decide between testifying adversely against her spouse in her own defense or exercising her privilege against adverse spousal testimony." *Id.* at 127. The Third Circuit held that the holder of the spousal privilege should be afforded the opportunity "to exercise that privilege without being forced to choose between it and the fundamental right to testify on her own behalf." *Id.*; *see also United States v. Ammar*, 714 F.2d 238, 257 (3d Cir. 1983) ("Testimony essential to a spouse's criminal defense must be permitted even if it discloses privileged communications. A severance may be granted for a co-defendant spouse, if necessary to protect his or her rights.").

The dueling rights and privileges create a precarious situation. One spouse is required to choose between preserving his or her spousal privilege and providing exculpatory testimony on his or her own behalf; while the other, non-testifying spouse risks the admission of damaging testimony that would otherwise be inadmissible if he was tried alone. *Blunt*, 930 F.3d at 127-28. Likewise, the non-testifying spouse must decide whether to permit their testifying spouse to introduce evidence about confidential communications or invoke the privilege to preclude the testimony, while the testifying spouse may ultimately be unable to introduce evidence that may exculpate him or her. This is why courts dealing with co-defendant spouses frequently sever their trials. *See, e.g.*, *United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995) (holding husband and wife should not be tried jointly where wife's defense relied on testimony that implicated her husband); *United States v. Dobson*, 2003 U.S. Dist. LEXIS 15491 (E.D. Pa. Aug. 19, 2003) (severing trial of husband and wife to protect "fundamental rights" not to testify on his own behalf and right not to

testify against the spouse); *United States v. Ali*, 2005 U.S. Dist. LEXIS 4719 (E.D. Pa. Mar. 24, 2005) (similar).

The precarious situation is plain here. Should Mr. and Mrs. Wilson be tried together, both spouses may be forced to choose between the right to testify on their own behalf and the privilege not to be compelled to testify adversely to their spouse. Indeed, in a joint trial, Mrs. Wilson's entire case, and her testimony if she chooses to testify, is expected to be damning to Mr. Wilson and would not be introduced if he were to be tried individually. Likewise, both may be prevented by the other from introducing confidential spousal communications that may be exculpatory. For this reason, the trials must be severed.

### B. Severance Is Required If The Government Intends To Introduce Mrs. Wilson's Statement And She Does Not Testify.

Trial also must be severed to prevent the prejudicial introduction of a co-defendant's statement that would not otherwise be admissible in a trial against the defendant. Here, Mrs. Wilson made post-arrest statements that implicate Mr. Wilson—specifically, that Mr. Wilson handles all insurance business, and "she has no involvement or knowledge into that subject." Exhibit A. In a trial against just Mr. Wilson, the government would not be permitted to seek introduction of Mrs. Wilson's post-arrest statements; they would be classic hearsay. In a joint trial, however, the government would be permitted to seek introduction of Mrs. Wilson's post-arrest statements under Fed. R. Evid. 801(d)(2)(A), as an opposing party's statements. Introduction of the statement creates a classic *Bruton* problem that requires severance.

The Supreme Court ruling in *Bruton v. United States*, 391 U.S. 123 (1968) holds that admission of a nontestifying codefendant's confession that implicates a codefendant at a joint trial violates the Confrontation Clause. If the entire, unredacted statement of the codefendant is to be admitted into evidence, "a severance is mandated." *Locklear*, 24 F.3d at 646. Sometimes the

6

Court can craft a remedy to the constitutional problem through redaction of identities from a nontestifying co-defendant's incriminating statements. Given the circumstances of this case—only two defendants and an insurance business run by a single person, Mr. Wilson—there is no redaction remedy in this case.

Accordingly, severance would be required if the government intends to introduce the statement.

        **C.    Severance Is Required Because Mr. And Mrs. Wilson Will Have Antagonistic Defenses And Mrs. Wilson Will Act As A Second Prosecutor Against Mr. Wilson.**

Furthermore, severance is warranted because Mrs. Wilson and Mr. Wilson have antagonistic defenses. Mrs. Wilson will undoubtedly place entire blame on Mr. Wilson, but it will go beyond mere finger-pointing. Mrs. Wilson's defense – *i.e.*, Mr. Wilson alone perpetrated the fraud – will be so antagonistic to Mr. Wilson that the jury "is presented with the proposition that to believe the core of [her] defense it must disbelieve the core of [Mr. Wilson's] defense" – *i.e.*, there was no fraud. *Najjar*, 300 F.3d at 474; *see also Zafiro*, 506 U.S. at 539.

This case goes beyond the typical case. Mrs. Wilson will act like a second prosecutor against Mr. Wilson. The Defense anticipates that she will argue that she, herself, is just another victim of Mr. Wilson's fraud. During cross-examination of each government witness, counsel for Mrs. Wilson will focus his questions on Mr. Wilson's total involvement and participation, and the absence of involvement and participation by Mrs. Wilson. During opening and closing, the theme of Mr. Wilson's guilt and Mrs. Wilson's innocence will be the same. The entire focus of Mrs. Wilson's defense is to pile on evidence of Mr. Wilson's guilt.

Mrs. Wilson's counsel will surely assert a defense that will be an "echo chamber" for the government's prosecution. *United States v. Shkreli*, 260 F. Supp. 3d 247, 256 (E.D.N.Y. 2017).

It was for this reason, as well as trial maintenance, that the Eastern District of New York severed a trial against a defendant and his co-defendant lawyer recently. *Shkreli*, 260 F. Supp. 3d at 256. In that case, the district court found that there would be irreparable prejudice to one defendant caused by "having to wage a defense on two fronts, in a single trial, before the jury." *Id*.

Here, again, the *Blunt* case is instructive. In that case, the Third Circuit also reversed the district court's denial of the codefendant husband's motion for severance based on the husband's and wife's antagonistic defenses. *Blunt*, 930 F.3d at 125-127. The wife provided damning testimony at trial that her husband was the instigator of an alleged unemployment fraud scheme and that she was a "reluctant, sometimes defiant, participant." *Id.* at 122-24. In reversing the denial of the husband's severance motion, the Court noted the prejudicial nature of the wife's testimony and the fact that it would not have been admitted if the husband had been tried alone and the wife had been able to exercise her spousal privilege. *Id.* at 126. The Court noted not only the emotional prejudice of the wife's testimony, but also the ways in which the wife's testimony provided confirmation to the government's arguments and allowed for the government to introduce prejudicial evidence against the husband. *Id.* ("Her testimony, coupled with the admitted MagicJack log, is exactly the kind of evidence that the Supreme Court cautioned against in *Zafiro*—that is, evidence that otherwise would not have been admitted at Hall's [the husband's] trial given Blunt's [the wife's] representation that she would exercise her spousal privilege in the event that their trials were severed."). For these reasons, the Third Circuit vacated the husband's conviction and sentence and remanded with instructions that the husband's motion for severance be granted. *Id.* at 127.

The prejudice here to Mr. Wilson by including Mrs. Wilson in his trial is identical. Severance is required because their defenses are so antagonistic to each other to deprive Mr. Wilson of a fair trial.

## CONCLUSION

For these reasons and for any other reasons which may appear to the Court, Mr. Wilson respectfully moves that his trial be severed from that of his wife and co-defendant, Maureen Wilson.

Respectfully submitted,

James Wyda
Federal Public Defender

/s/_____
Maggie Grace (#29905)
Meghan Michael (#811137)
Assistant Federal Public Defenders
Tower II, 9th Floor
l00 South Charles Street
Baltimore, Maryland 21201
Telephone: (410) 962-3962
Fax: (410) 962-0872
Maggie_grace@fd.org
Meghan_michael@fd.org


/s/_____
John M. McNichols (Bar # 1203220001)
Anna K. Tsiotsias (*pro hac vice pending*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jmcnichols@wc.com
atsiotsias@wc.com

## **REQUEST FOR HEARING**

     Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, a hearing is requested on Defendant's motion.

/s/
Maggie Grace
Assistant Federal Public Defender
