IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Case No. 1:21cr360-DKC** |
| **JAMES WILLIAM WILSON, JR.** | * | |

\* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR A NEW TRIAL**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES...........................................................................................................ii

PRELIMINARY STATEMENT.....................................................................................................1

LEGAL STANDARD ....................................................................................................................2

ARGUMENT ..................................................................................................................................3

    I.    The Government improperly relied on inadmissible lay witness testimony to prove a required element of the fraud charges. ............................................................3

    II.    Even if the lay testimony were admissible, the Government did not present sufficient evidence as to materiality for any insurance company or investor...................5

    III.    The erroneous jury instructions failed to reflect the recent Supreme Court decision in *Ciminelli* or to adequately define the elements of "intent to defraud" in the context of the charged fraud crimes....................................................................7

    IV.    The Court erred by excluding a jury instruction and evidence that insurance proceeds are generally not taxable, without which the jury could not properly consider the required intent as to the tax fraud charges................................................12

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Annor v. Garland*,
  95 F.4th 820 (4th Cir. 2024) ..................................................................................... 14

*Banc One Capital Partners Corp. v. Kneipper*,
  67 F.3d 1187 (5th Cir. 1995) ..................................................................................... 12

*Burlington Northern & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ...................................................................................................... 6

*Ciminelli v. United States*,
  598 U.S. 306 (2023) ............................................................................................ 7, 8, 9

*Cleveland v. United States*,
  531 U.S. 12 (2000) ...................................................................................................... 8

*Kousisis v. United States*,
  No. 23-909 (argued Dec. 9, 2024) .............................................................................. 8

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) .................................................................................................. 13

*Nat'l Fair Hous. All. v. Bank of Am., N.A.*,
  Civil Action No. SAG-18-1919, 2023 WL 1816902 (D. Md. Feb. 8, 2023) ......... 3, 4

*Neder v. United States*,
  527 U.S. 1 (1999) ................................................................................................. 2, 10

*Percoco v. United States*,
  598 U.S. 319 (2023) .................................................................................................. 12

*Schmuck v. United States*,
  489 U.S. 705 (1989) .................................................................................................. 10

*United States v. Aiello*,
  118 F.4th 291 (2d Cir. 2024) ..................................................................................... 12

*United States v. Boynton*,
  63 F.3d 337 (4th Cir. 1995) ....................................................................................... 12

*United States v. Elfenbein*,
  708 F. Supp. 3d 621 (D. Md. 2023) ............................................................................ 2

*United States v. Farrell*,
    921 F.3d 116 (4th Cir. 2019)......................................................................................3

*United States v. Freeman*,
    730 F.3d 590 (6th Cir. 2013)......................................................................................5

*United States v. Gaudin*,
    515 U.S. 506 (1995) .................................................................................................10

*United States v. Guertin*,
    67 F.4th 445 (D.C. Cir. 2023) ..................................................................................10

*United States v. Hancock*,
    512 F. App'x 266 (4th Cir. 2013).............................................................................14

*United States v. Johnson*,
    617 F.3d 286 (4th Cir. 2010)..................................................................................2, 5

*United States v. Lewis*,
    53 F.3d 29 (4th Cir. 1995) .........................................................................................2

*United States v. McIver*,
    470 F.3d 550 (4th Cir. 2006)....................................................................................12

*United States v. Milheiser*,
    98 F.4th 935 (9th Cir. 2024).....................................................................................10

*United States v. Padgett*,
    422 F. App'x 287 (4th Cir. 2011)..................................................................... 2, 5, 8

*United States v. Patterson*,
    150 F.3d 382 (4th Cir. 1998)......................................................................... 8, 11, 13

*United States v. Perkins*,
    470 F.3d 150 (4th Cir. 2006).................................................................................3, 5

*United States v. Singh*,
    518 F.3d 236 (4th Cir. 2008)....................................................................................14

*United States v. Starr*,
    816 F.2d 94 (2d Cir. 1987).......................................................................................10

*United States v. Takhalov*,
    87 F.3d 1307 (11th Cir. 2016), *opinion modified on denial of reh'g*, 838 F.3d
    1168 (11th Cir. 2016) ......................................................................................... 10, 12

*United States v. Tucker*,
    376 F.3d 236 (4th Cir. 2004)......................................................................................2

*United States v. Wright*,
   665 F.3d 560 (3d Cir. 2012)......................................................................................12

**Statutes**

18 U.S.C. § 1028A(a)(1) ...............................................................................................14

18 U.S.C. §§ 1956(a), 1956(h), and 1957.....................................................................14

26 U.S.C. § 7206(1) ......................................................................................................14

**Other Authorities**

Fed. R. Crim. P. 33 .....................................................................................................1, 2

Fed. R. Crim. P. 33(a) .....................................................................................................2

Fed. R. Evid. 701(c);..................................................................................................3, 5

Fed. R. Evid. 602 ............................................................................................................3

U.S. Const. Amend. VI...................................................................................................4

## PRELIMINARY STATEMENT

James Wilson, by and through undersigned counsel, respectfully submits this Memorandum of Law in Support of Defendant's Motion for a New Trial.

The Court should grant this motion for a new trial under Federal Rule of Criminal Procedure 33. A new trial is warranted for four independent reasons: (1) the Government failed to introduce evidence of materiality, a required element of the mail and wire fraud counts, through witnesses with first-hand knowledge of the events at issue; (2) the Government failed to present <u>any</u> evidence of materiality as to some victims; (3) the jury instructions were wholly insufficient as to the definition of "property" and deprivation of property under the federal fraud statutes; and (4) the Court erroneously excluded a jury instruction and evidence relating to the taxability of insurance proceeds, without which the jury could not properly consider the required intent as to the tax fraud charges.

This Court should grant Mr. Wilson a new trial for four independent reasons. First, the Government's evidence on the required element of materiality of the fraud charges relied entirely on inadmissible opinion testimony by lay witnesses who had no first-hand knowledge of the events which they testified about. Second, the Government failed to introduce any materiality evidence whatsoever for the majority of the allegedly victimized insurance companies, or to present evidence that the alleged deceptions were material to any of the investors at the time they invested in the policies. Third, the jury instructions omitted essential statements of law surrounding the fraudulent intent and materiality elements of the wire fraud and mail fraud crimes of which Mr. Wilson was charged. Fourth, the Court erred by excluding a jury instruction and evidence that insurance proceeds are generally not taxable; the jury was accordingly unable to properly consider whether Mr. Wilson had a good-faith belief that he filed accurate tax returns. Because each of

1

these errors was substantial and non-harmless, the Court should grant Mr. Wilson's motion for a new trial.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 33 states: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The district court has "broad discretion" to "grant or deny a motion for new trial." *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004). "A motion for a new trial should be granted if there were substantial errors during the course of the trial." *United States v. Padgett*, 422 F. App'x 287, 288 (4th Cir. 2011).

As outlined below, three substantial errors in this case require granting a motion for a new trial: (1) reliance on inadmissible lay witness testimony; (2) lack of evidence to support a required element of a charged offense (materiality of the fraud allegations); and (3) failure to provide essential jury instructions. Where a district court admits inadmissible lay testimony and its admission is not harmless, the decision to admit such testimony constitutes reversible error. *See, e.g.*, *United States v. Johnson*, 617 F.3d 286, 293–94 (4th Cir. 2010) (reversing conviction based on admission of lay witness testimony with no basis in first-hand knowledge). Failing to introduce admissible evidence on a required element of an offense also constitutes reversible error. *See United States v. Elfenbein*, 708 F. Supp. 3d 621, 659 (D. Md. 2023) (stating each essential element of an offense must be proven beyond a reasonable doubt); *Neder v. United States*, 527 U.S. 1, 15 (1999) (stating it is not harmless error when there is reasonable doubt an error contributed to a guilty verdict). Where a jury instruction fails to inform the jury that the defendant cannot be convicted for certain types of conduct, that failure is never harmless. *See United States v. Lewis*, 53 F.3d 29, 35 (4th Cir. 1995).

## ARGUMENT

**I.   The Government improperly relied on inadmissible lay witness testimony to prove a required element of the fraud charges.**

A new trial is required because the Government relied entirely on inadmissible, speculative testimony by lay witnesses without first-hand knowledge to prove an essential element of its case. Rule 602 of the Federal Rules of Evidence provides that a lay witness may only "testify to a matter" if they have "personal knowledge of the matter," and Rule 701 prohibits a lay witness from offering opinions "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c); *see also United States v. Farrell*, 921 F.3d 116, 143 (4th Cir. 2019). Rule 701 is specifically intended to "forbid[] the admission of expert testimony dressed in lay witness clothing." *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006). Only experts may offer opinions based on information regarding which they have no first-hand knowledge. *See, e.g.*, *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, No. SAG-18-cv-1919, 2023 WL 1816902, at *4 (D. Md. Feb. 8, 2023).

The Government's assertion that thirteen life insurance companies found Mr. Wilson's statements material to the decision of whether and on what terms to issue life insurance policies rested on the testimony of just six individuals, none of whom had first-hand knowledge of these decisions. The Government acknowledged as much during closing arguments, telling the jury that "you didn't hear from the actual underwriter associated with any of these policies." Excerpt of Proceedings, Closing Arguments, at 37:20–22 (Attached as Exhibit 1). The witnesses also uniformly admitted their lack of involvement with the policies or underwriting decisions about which they testified. To take two examples:

> **Kristin Pounds (John Hancock Life Insurance):**
>
> *Q: Do you have the underwriter's file?*
> *A: I do not.*
> *Q: Do you have the underwriter's emails?*

3

*A: I do not.*
*Q: Do you have the conversation between the underwriter and the medical director?*
*A: I do not.*

Excerpt of Proceedings, Pounds, at 35:19–25 (Attached as Exhibit 2). *See also id.* at 37:21–24; 50:17–24 (speculating about pertinent details before admitting she did not know them firsthand).

**Courtney Jacobson (Midland National Life Insurance):**

*Q: So you were not even employed by Midland in 2005?*
*A: I was not.*
*Q: And obviously you were not the underwriter handling this case in 2005?*
*A: Correct.*
*Q: Who was the underwriter who actually reviewed this file in 2005?*
*A: I am not familiar with the underwriter.*
*Q: Did you review the emails of the underwriter who actually handled this case in 2005?*
*A: I did not.*
*Q: When did you first review this file, what date?*
*A: I don't recall the date.*

Excerpt of Proceedings, Jacobson, at 30:4–16 (Attached as Exhibit 3). In fact, <u>many of these individuals were not even employed by the companies they purported to represent at the time of the conduct about which they testified</u>. One admitted to having no knowledge of the documents or events in question until speaking with government attorneys in the days and weeks before trial. *See id.* at 30:19–22 (stating she was first contacted by the Government in 2025).[1]

Since none of the Government's witnesses were involved with the policies at the time they were issued, they could only generalize what they *would* do rather than describe what they *did* do. Such speculation is core expert testimony and impermissible for lay witnesses under Rule 701. In

---

[1] The Court's willingness to permit lay witnesses with absolutely no firsthand knowledge to testify about the decision-making process of third-party underwriters also raises Confrontation Clause issues. Mr. Wilson's right "to be confronted with the witnesses against him" was repeatedly violated as witness after witness opined on what factors were relevant to past underwriting decisions that they themselves did not make. U.S. Const. amend. VI. Every speculative statement these witnesses made put words in the mouths of non-present witnesses, about which they could not be effectively cross-examined.

4

fact, <u>these lay witnesses functioned so effectively as impermissible expert witnesses that the Government declined to call its designated expert witness on life insurance at all</u>—the lay witnesses had done the expert's job for them.[2]

As quintessential "expert[s] . . . dressed in lay witness clothing," the Government witnesses' testimony on materiality should have been excluded under Rule 701. *Perkins*, 470 F.3d at 156. The admission of the testimony was not harmless because without it, the Government put forth little, if any, remaining evidence of materiality. *See United States v. Freeman*, 730 F.3d 590, 598 (6th Cir. 2013) (vacating conviction based on an FBI agent's non-expert testimony which relied on his expertise based on years of experience); *Johnson*, 617 F.3d at 293–94 (vacating conviction obtained largely through inadmissible lay opinion testimony). Reversal is required where inadmissible testimony is the only proof on an essential element of a charged offense. *See, e.g.*, *Padgett*, 422 F. App'x at 288 (holding "substantial errors" at trial warrant granting a motion for a new trial).

II. **Even if the lay testimony were admissible, the Government did not present sufficient evidence as to materiality for any insurance company or investor.**

In addition to relying on inadmissible testimony for the six insurance companies for which witnesses testified, <u>the Government presented no witness whatsoever for seven other life insurance companies whose policies were included in the Government's conspiracy charges</u>: Voya, Americo, Transamerica, Protective Life, Wilco Life, Jackson National, and American General. Instead, the Government simply asked the jury to take testimony from one victim company and assume that it applied to all others not present. "[C]ontext matters" when determining materiality, however, because "an act that would be immaterial in some situations is material in others." *Burlington N.*

---

[2] For one of the purported lay witnesses, Val Munchez-van der Wagt, testifying as an expert witness <u>is</u> her current job. Munchez runs VM Insurance Consulting, where she offers expert witness services. *See* VM Insurance Consulting-Life Underwriting Consulting Services, https://vminsco.com (last accessed Feb. 3, 2025).

5

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (internal citations omitted). In an industry as competitive and multi-faceted as life insurance, no two companies are the same, and companies may reasonably reach different decisions for different categories of policies. The insurance policies at issue here also differed in many ways, including type of coverage, dollar value, date issued, and customer's age when issued.

Tellingly, the only time Voya, Americo, Transamerica, Protective Life, Wilco Life, Jackson National, and American General were even mentioned at trial was in the presentation of summary evidence contained in a chart, Government Exhibit 525.[3] This exhibit was introduced through the testimony of Special Agent Williams, an IRS Agent, and purported to list all of the allegedly fraudulent insurance policies procured by Mr. Wilson. Yet nothing on the summary charts supports the Government's suggestion that the different misrepresentations materially impacted each insurance company's decision to issue the policy. The Government's own witness stated that the policy owner's "willingness or ability to pay" is more important to the insurance company's decision than other factors, but that information was not even included in the chart. *See* Excerpt of Proceedings, Fluharty, at 10:4–5 (Attached as Exhibit 4).

Similarly, the Government presented no testimony showing that any alleged misrepresentation by Mr. Wilson was actually material to any investor's decision to invest. To the contrary, the testimony confirmed that every investor: (1) knew that they were contributing money to pay for insurance; (2) knew that their investment involved death benefits; (3) knew that they would be paid upon the death of the insured; and (4) knew that Mr. Wilson would handle the insurance paperwork. *See, e.g.*, Excerpt of Proceedings, Ruhl, at 26:13–15 ("There was a $3 million policy of which my mother was paying a premium towards 10 percent or $300,000. And

---

[3] Notably, the Government's summary chart required extensive modification before the Court would even consider permitting the jury to see it. *See* ECF No. 207 (arguing that Exhibit 525 is confusing, argumentative, and misleading).

then when Vilma died, my mother would get the $300,000.") (Attached as Exhibit 5). The investors even cut checks to insurance companies and to trusts in the names of the insured individuals. Thus, there was no question that the investors were fully aware of the intended use of the funds at the time these investments were made. The only details to which any investors suggested being misled related to the administration of these policies—how Mr. Wilson handled the payment of premiums, who was named as a beneficiary, and how policy benefits were to ultimately be paid. No testimony was adduced to show that any of these details, to the extent they were misleading, was material to the decision to invest (let alone the cause of any harm to an investor, as discussed further in the next section). Since the Government manifestly failed to carry its burden of proof on materiality, this Court should grant Mr. Wilson a new trial.

**III.    The erroneous jury instructions failed to reflect the recent Supreme Court decision in *Ciminelli* or to adequately define the elements of "intent to defraud" in the context of the charged fraud crimes.**

A new trial is warranted because the Court's jury instructions regarding Mr. Wilson's requisite intent to defraud under these statutes were legally insufficient in three respects. First, the Court declined Mr. Wilson's proposed jury instructions incorporating recent Supreme Court precedent in *Ciminelli v. United States*, 598 U.S. 306 (2023), defining "property" under the federal fraud statutes. Second, the Court declined to explain to the jury that to show intent to defraud, the deception must not merely be calculated to induce a party to transact but must also affect the "benefit of the bargain" offered to the counterparty in a way intending to cause a monetary or property injury. Third, the Court declined to provide the jury with necessary detail on the timing of the materiality requirement as it relates to the intent to defraud.

Refusal to grant a requested instruction is reversible error if the requested instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with

7

some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Patterson*, 150 F.3d 382, 388 (4th Cir. 1998) (citing *Lewis*, 53 F.3d at 32). Because these inadequate jury instructions allowed the jury to convict Mr. Wilson for conduct that is not criminal, the error was inherently "substantial" and a new trial is warranted. *See Padgett*, 422 F. App'x at 288.

    a) The *Ciminelli* Instruction

The Court erred by rejecting Mr. Wilson's proposed instructions on the requirements of intent to defraud based on the 2023 Supreme Court decision in *Ciminelli v. United States*, 598 U.S. 306 (2023). In that case, the Supreme Court considered a conviction for wire fraud charges in which the jury was advised that deception aimed at depriving the victim of "potentially valuable economic information necessary to make discretionary economic decisions" was sufficient to support conviction. *Id.* at 310. The Supreme Court unanimously overturned the conviction, stating that "information necessary to make discretionary economic decisions" is not a "traditional property interest[]" covered by the fraud statutes, even if it has a downstream impact on economic decision making. *Id.* at 309–11, 316 (internal citations omitted). In this respect, *Ciminelli* follows a line of Supreme Court cases underscoring that the definition of "property" under the federal fraud statutes must be construed narrowly, with any ambiguity "resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000).[4]

The *Ciminelli* reasoning is directly relevant to the charges against Mr. Wilson. All the charges against Mr. Wilson relate to withholding or falsifying information in life insurance

---

[4] On the Court's strengthening general mandate against broad construction of the federal fraud statutes, see *Cleveland*, 531 U.S. at 25; *see also* Transcript of Oral Argument at 40, *Kousisis v. United States*, No. 23-909 (argued Dec. 9, 2024) ("[A] lot of these things could be dealt with under state law, and you don't have to federalize every jot and title in a large contract. . . . [W]e've expressed in many precedents that the federalization of something as simple as nuances of contract law, it's a very serious matter[.]" (quoting Roberts, C.J.)). The Supreme Court's pending decision in *Kousisis* will further clarify the extent—if at all—to which the use of deception to enter into a transaction where the victim suffers no financial harm can support a fraud conviction.

documentation. Under the Government's theory, this information was used by insurers to make discretionary economic decisions about whether and how to issue insurance, and by investors to make discretionary economic decisions about whether and how much to invest. Disregarding *Ciminelli*, the Court merely instructed the jury that "the government must prove that the alleged scheme contemplated depriving another of money or property," Jury Instructions, ECF No. 221 at 26, providing no further explanation of the "money or property requirement" except to say that "[t]he first element of mail and wire fraud . . . is almost self-explanatory." *Id.* at 24. The jury instructions proposed by Mr. Wilson would have appropriately made the jury aware of the outer boundary of criminal conduct established by the *Ciminelli* holding:

> To qualify as Wire Fraud or Mail Fraud, the scheme must intend to deprive the victim of "money or property." <u>Actions which are only intended to deprive another party of "potentially valuable economic information necessary to make discretionary economic decisions," including "information that affects the victim's assessment of the benefits or burdens of a transaction, or relates to the quality of goods or services received or the economic risks of the transaction," are not sufficient</u>. Therefore, if you find that the conduct did no more than cause an insurance company to enter a transaction it otherwise would have avoided, you must find the Defendant not guilty.

Defendant's Proposed Jury Instructions, ECF No. 210 at 11 (emphasis added). Thus, Mr. Wilson's instructions were a correct statement of law not otherwise covered by the Court.

     b) *Benefit of the Bargain Instruction*

Second, the Court declined to instruct the jury on the application of intent to "deprive" of money or property in the context of commercial transactions—in particular, the need to distinguish non-harmful deception from fraud which intends to deny the victim "the benefit of the bargain." This instruction on intent to defraud is critical, since virtually all commercial transactions involve payment of money, but many of them do not involve intended injury. *See United States v. Takhalov*, 87 F.3d 1307, 319 (11th Cir. 2016), *opinion modified on denial of reh'g*, 838 F.3d 1168

9

(11th Cir. 2016); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *United States v. Milheiser*, 98 F.4th 935, 944 (9th Cir. 2024); *United States v. Guertin*, 67 F.4th 445, 451–52 (D.C. Cir. 2023).

Mr. Wilson's proposed instructions would have explained this essential information:

> [T]he false or fraudulent pretenses itself, representations, or promises must go to the essence of the agreement between the parties—in this case the insurance companies and the individuals applying for life insurance. The deceit must therefore be coupled with a contemplated harm to the victim that affects the nature of the bargain.

Defendant's Proposed Jury Instructions, ECF No. 210 at 4.

      *c) Materiality Instruction*

Third, the jury was not instructed on the fact that the alleged misrepresentation must have the capacity to influence the victim <u>at the point in time the statement was made</u>. *See, e.g.*, *Neder*, 527 U.S. at 16; *United States v. Gaudin*, 515 U.S. 506, 509 (1995); *Schmuck v. United States*, 489 U.S. 705, 715 (1989). This materiality instruction was essential because most of the deceptive acts alleged by the Government in this case involved changes to ownership or beneficiaries of life insurance policies <u>after</u> the policies were issued. *See, e.g.*, Amended Indictment, ECF No. 184 at Counts 10–13. During the trial, multiple witnesses testified—and the Court agreed—that such deceptive acts would not have affected timing or amount of payment:

> **[A]s far as payout, we need to know who we're paying. We need to be able to identify the beneficiary.**

Excerpt of Proceedings, Munchez-van der Wagt, at 18:22–24 (Attached as Exhibit 6).

> **It's important because we're legally bound by the contract to pay the premiums and to handle the policy as described in those terms and conditions. And so it's important that we have the identities accurate.**

Excerpt of Proceedings, Pounds, at 17:10–13 (Exh. 2).

> **MR. NOUD: Defense counsel is arguing that these Change of Beneficiary forms are immaterial to the life insurance companies.**

> **THE COURT: In the sense that they're going to have to pay the money to somebody after the contestability period is over. <u>So it isn't material in terms of that they have to pay</u>.**

Excerpt of Proceedings, Fitzpatrick, at 45:2–8 (emphasis added) (Attached as Exhibit 7).

Recognizing this disconnect between the timing of alleged deceptions and the decisions based on which the Government argued the harm occurred, Mr. Wilson's proposed jury instructions would have provided the jury the crucial guidance the given jury instructions lacked:

> A material misrepresentation must be a statement or omission that would be important to a reasonable actor in deciding whether or not to approve an insurance policy or take part in an investment. Importantly, <u>the capacity to influence must be measured at the point in time that the statement or claim was made</u>.

Defendant's Proposed Jury Instructions, ECF No. 210 at 8 (emphasis added).

### d) *Effect of Deficient Jury Instructions*

Each of the Court's deficient jury instructions detailed above undermined the jury's ability to determine whether the Government had, in fact, proved the requisite intent to defraud. The jury was not told that "information necessary to make discretionary economic decisions" is not "property" under the federal fraud statutes. The jury was not told that in order to intend to defraud someone, a defendant must intend to deny that person the "benefit of the bargain." And the jury was not told that, to be material, misrepresentations must have had the capacity to influence the victim *at the time the statements were made*. Each of the rejected instructions was a correct statement of law, adopted from recent Supreme Court precedent as well as precedent from multiple circuit courts, and each was "not substantially covered by the court's charge to the jury." ECF No. 210; *Patterson*, 150 F.3d at 388. Mr. Wilson's ability to conduct his defense was unquestionably "seriously impaired" by the "failure to give the requested instruction[s]." *Patterson*, 150 F.3d at 388. Since a reasonable juror armed with proper instructions easily could have concluded that Mr.

11

Wilson's conduct did not meet one or more of these requirements,[5] a new trial with correct jury instructions is warranted.

**IV.     The Court erred by excluding a jury instruction and evidence that insurance proceeds are generally not taxable, without which the jury could not properly consider the required intent as to the tax fraud charges.**

The tax fraud charges against Mr. Wilson, Counts 18 and 19, alleged that he ought to have declared life insurance benefits which he and his wife received as taxable income. To prove these charges, the Government had to show beyond a reasonable doubt that Mr. Wilson "<u>did not believe the return</u>" which excluded the benefits "<u>to be true and correct as to every material matter</u>," and <u>that Mr. Wilson did this willfully</u>. *See* Jury Instructions, ECF No. 221 at 37. Over the course of the trial, the Court permitted various witnesses to state that life insurance benefits are taxable when obtained under certain conditions, even though this is properly a question of law. *See United States v. Boynton*, 63 F.3d 337, 342 (4th Cir. 1995) (stating that the "proper construction of . . . regulations is a matter of law" for courts to interpret). And, of course, "[o]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006).

Despite allowing the Government to present inadmissible lay testimony on a matter of tax law, the Court denied Mr. Wilson's oral motion to introduce as an exhibit a page from the IRS's own website which stated: "Generally, life insurance proceeds you receive as a beneficiary due to the death of the insured person, aren't includable in gross income and you don't have to report

---

[5] Even where key terms in the fraud statutes <u>are</u> defined in the jury instructions, but are done so erroneously, new trials will often be granted. See, e.g., *Percoco v. United States*, 598 U.S. 319, 330–31 (2023) (reversing honest-services fraud conviction predicated on erroneous jury instructions); *United States v. Aiello*, 118 F.4th 291, 303 (2d Cir. 2024) (vacating on the same basis); *United States v. Wright*, 665 F.3d 560, 570, 575–76 (3d Cir. 2012) (vacating honest-services and mail fraud convictions on same basis); *Takhalov*, 827 F.3d at 1312–13 (reversing based on jury instructions failing to adequately define intent to defraud element of wire fraud); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1192–93 (5th Cir. 1995) (reversing and remanding for new trial based on district court's erroneous materiality instruction on securities fraud in civil context).

12

them."[6]  Unlike the lay witnesses the Government offered, the IRS's interpretation of its own regulations carries some weight.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) (stating "[c]areful attention to" agency interpretation "help[s] inform" courts' interpretation of agency-enabling statutes).

Compounding this error, the Court declined to incorporate Mr. Wilson's proposed instruction that "testimony from various witnesses relating to the tax treatment of life insurance proceeds . . . are not a statement of the law on the tax treatment of life insurance proceeds." Defense Request 13, Tax Treatment of Life Insurance Benefits, ECF No. 210 at 14.  The taxability of proceeds was obviously relevant to the tax fraud charge because it speaks directly to Mr. Wilson's good-faith belief that his returns were true and correct.  Nevertheless, the Court denied the request.  As with the fraud instructions, allowing the jury to hear uncontroverted testimony suggesting that the insurance proceeds were taxable while denying Mr. Wilson the opportunity to show the jury IRS interpretations to the contrary prevented the jury from considering whether Mr. Wilson acted in good faith.

The Court's failure to instruct on taxability of insurance proceeds or permit the jury to view IRS guidance on such proceeds "seriously impaired" Mr. Wilson's ability to conduct his defense. *Patterson*, 150 F.3d at 388.  Because a properly instructed, reasonable juror could have concluded that Mr. Wilson <u>believed</u> his return to be true and correct, this Court should grant Mr. Wilson a new trial.

**V.    The legal deficiencies in Mr. Wilson's fraud convictions make his remaining convictions legally deficient.**

Any new trial of Mr. Wilson's mail and wire fraud convictions must also encompass the

---

[6]  *Life Insurance & Disability Insurance Proceeds*, IRS.gov (last updated Oct. 9, 2024), https://www.irs.gov/faqs/interest-dividends-other-types-of-income/life-insurance-disability-insurance-proceeds/life-insurance-disability-insurance-proceeds.

13

money laundering, tax evasion, and aggravated identity theft convictions, because the fraud counts either constitute the required predicate offenses or form the basis for the Government's theory for all seven other counts on which Mr. Wilson was convicted.

As to the Money Laundering charges (Counts 14–16), 18 U.S.C. §§ 1956(a), 1956(h), and 1957, all require a finding that the proceeds in question are derived from a predicate illegal activity. *See United States v. Singh*, 518 F.3d 236, 248 (4th Cir. 2008) (requiring the Government establish defendant's knowledge that "money laundering proceeds had been derived from an illegal activity" to convict under § 1956(h)); *Annor v. Garland*, 95 F.4th 820, 828 (4th Cir. 2024) (quoting *United States v. Cherry*, 330 F.3d 658, 668 (4th Cir. 2003)) (stating a § 1957 conviction "requires proof that 'the defendant knowingly participated in a monetary transaction involving <u>criminally derived proceeds</u>'") (emphasis added); 18 U.S.C. § 1956(a)(1) (stating that a defendant cannot "know[] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" when, in fact, the property involved <u>does not</u> "represent[] the proceeds of some form of unlawful activity"). The charge of Aggravated Identity Theft (Count 20), under 18 U.S.C. § 1028A(a)(1) also requires a predicate offense such as fraud. *See United States v. Hancock*, 512 F. App'x 266, 270 (4th Cir. 2013) ("Mail fraud is a predicate offense to being found guilty of aggravated identity theft."). Finally, while the tax fraud statute 26 U.S.C. § 7206(1) (Counts 18–19) does not expressly require a predicate crime, the Government's assertion that taxes were owed took for granted that the revenue constituted proceeds of a crime. In fact, the only evidence submitted by the Government to support the conclusion that taxes ought to have been paid at all was an agent report that <u>assumed</u> the revenue was proceeds of unlawful conduct.[7] *See* Gov't Exhs.

---

[7] The Government admitted that IRS Agent Jennifer Maroulis's "computations" were "based on a hypothetical scenario in which the life insurance proceeds were found to be illegally obtained." Email from Erek L. Barron, U.S. Att'y, to Richard Bardos, Esq., at 1 n.1 (Apr. 20, 2023) (Attached as Exhibit 8).

517, 518. Thus, if the proceeds did not, in fact, derive from unlawful conduct, there would be no basis to find the required element that taxes were owed. Retrial on the federal fraud counts accordingly requires retrial on the tax fraud counts.

## CONCLUSION

For the above reasons, Mr. Wilson respectfully requests that this Court grant a new trial on all counts.

Dated: February 6, 2025                    Respectfully submitted,

/s/     *Kwame J. Manley*

Kwame J. Manley (#1012170015)
Daniel A. Holman (*pro hac vice*)
Caroline J. Riley (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1962
Fax: (202) 551-0462
kwamemanley@paulhastings.com

*Counsel for James William Wilson, Jr.*